## No. 6035.

## JOHN MAINES v. THE STATE.

1. PRACTICE—CONTINUANCE—DILIGENCE—NEW TRIAL.—See the opinion for a showing of diligence in an application for continuance, *held* sufficient. And see the statement of the case for the substance of evidence set forth in an application for continuance, *held*, in view of the circumstantial nature of the inculpatory testimony, to have been material, and to have demanded of the trial court the award of a new trial in consequence of the refusal of a continuance.

2. SAME—PERJURY—CIRCUMSTANTIAL EVIDENCE.—Under the Code of this State a conviction for perjury can not be had upon purely circumstantial evidence. There may, however, be evidence technically circumstantial, yet virtually direct and positive. See the opinion in illustration.

3. SAME.—A conviction for perjury can be had, in this State, only upon the testimony of two credible witnesses, or of one credible witness, strongly corroborated by other evidence, as to the falsity of the defendant's statements under oath, or upon the confession of the defendant in open court.

APPEAL from the District Court of Falls. Tried below before the Hon. Eugene Williams.

This was a conviction for perjury, and the penalty assessed was a term of five years in the penitentiary.

The proof developed on this trial is the same in substance as that developed on the former trial of the appellant, which will be found fully set forth in the report of the former appeal, beginning on page 568 of the twenty-third volume of these Reports. It is deemed proper, however, to briefly restate the case in this report, in order to properly illustrate the ruling of the court upon the motion for new trial, based upon the testimony of the absent witness, Mrs. Wyers. The proof proposed to be made by her, together with that of the two witnesses referred to in the opinion, will be set out in full.

The perjury assigned was upon the several statements made under oath by the appellant as a witness for the defense upon the trial of one Joe Wyers for cattle theft, which said trial was had on February 13, 1886. The indictment against Wyers charged him with the theft on October 28, 1885, of a beef steer,

the property of G. W. Lewis, which said steer was branded UO on one side, and —B— on the other.  On the trial of Wyers, the State proved the disappearance of the Lewis steer, and by two witnesses that, on or about the day alleged in the indictment, they went to Wyers's house and found him and George W. Morris skinning and butchering a beef which in every respect corresponded to the Lewis steer, the hide of which beef was on the next day taken from Wyers's lot fence, and identified as the hide of the Lewis steer.

According to the witnesses in this case, the defendant, as a witness for Wyers upon the latter's trial, testified substantially as follows:

That some time early in the month of October, 1885 (he could not say exactly what time during said month, but he knew it was some time prior to the arrest of Joe Wyers on October 30, 1885), he was employed by Joe Wyers to hunt cattle; that during said month, some time between the sixteenth and thirtieth of said month, one day while they (Joe Wyers and defendant John Maines) were out riding in the Hope Church country, in Falls county, Texas, looking for cattle, they met one W. T. Richardson, who was also riding, who told them about a certain steer that was dead that he (Richardson) had seen near the road leading from Hope Church to John C. Criswell's in said county; that this was about eleven o'clock a. m.; that they (defendant and Joe Wyers) went on up into the Criswell neighborhood and were gone until some time in the afternoon, when they returned on the same evening to Joe Wyers's house, which was about half a mile from Hope Church, and there got their dinner about three o'clock p. m.; that after eating their dinner they again went on the range and hunted for cattle until very late in the evening, when they went to the place where Richardson had told them they would find this steer dead; that they found in an open glade to the right of the road leading from Hope Church to Criswell's, and about a half mile from Hope Church, and some fifty or seventy-five yards from the road, a pale red steer lying dead; that this was a pale red steer with some white in its face, and witness's recollection was, he said, it had some white in its flank; that it had the UO brand on one side, and —B— on the other side; that he knew the steer well; that it was a pale red steer that had run with the old lady Wyers's cattle; that it was poor and thin in flesh, and had the appearance of having died with the scours;

that he knew the UO Brand was given by G. W. Lewis; that the steer was swolen up, and the buzzards had picked out its eyes; that he, defendant Maines and Joe Wyers, skinned it and took the hide and carried the same to Joe Wyers's house, and hung the same on the back lot fence; that he knew this steer was not fat enough for beef, and that he would hate to eat a piece of it; that they, defendant Maines and Joe Wyers, finished skinning this steer about dark, and carried the hide to Joe Wyers's house and hung the same on the back lot fence.

Upon this trial, as upon the former trial of the defendant, and as upon the trial of Wyers for the theft of the Lewis steer, the State's witness R. A. Reed (better known as "Tom" Reed) testified, in substance, that he knew Joe Wyers and George W. Morris, who lived with said Wyers, and in October, 1885, he, witness, lived near the house of the said Wyers. Between sun down and dark on the evening of the twenty-eighth day of said month, the witness went to the house of the said Wyers to see the said Morris. He found the said Wyers and the said Morris in the cow lot of the former, butchering and skinning a beef. The animal appeared to the witness to be a fat one, and the piece of the flesh which was then given to him by Wyers, and which was taken home and eaten by him, tasted like, and was, fat beef. The hairy side of the hide was down, and witness could not then tell the color of the hide, nor the brands on it. From its size and appearance, the witness took that beef to be somewhat past two years old. On the second day thereafter which was October 30, 1885, Wyers was arrested for the theft of the G. W. Lewis red steer, branded UO on one side and —B— on the other. Immediately after the arrest of Wyers Deputy Sheriff Barlow came by the witness's house and summoned him as a posse to execute a search warrant upon the premises of Wyers to discover beef hides. Witness went with the said Barlow, and on the lot fence at the house of the said Wyers they found the hide of a red steer, somewhat past two years old, branded UO on one side and —B— on the other. That hide was taken by witness and Barlow to Marlin, and by Barlow was placed in the jail yard, where the witness afterwards saw it.

The witness stated that he was a stock man of long experience. The hide procured by him and Barlow from the lot fence of Wyers appeared to be the hide of a fat animal somewhat past two years in age, and to have been removed from an ani-

mal which came to its death not more than three or four days
before he and Barlow found it. A red steer, about two years old,
of a "staggish" appearance about the head, and branded UO on
one side, and —B— on the other, commenced to run the range
with witness's home bunch of cattle, in the spring of 1885. It
was the only animal of its kind on the range. It lay about the
witness's home place until about October 28, 1885, the date al-
leged in the indictment against Wyers, when it disappeared,
and witness had not seen it since. That animal, when the
witness last saw it, a few days before the arrest of Joe Wyers,
was fat and in good condition. The hide found by witness and
Barlow at Wyers's house the witness believed to be the hide of
that animal. It corresponded in color, age, size and brand with
that animal. The UO brand was the brand of Mr. G. W.
Lewis, of Limestone county, and the cattle branded UO on one
side and —B— on the other were cattle which the said Lewis
bought from Mr. John Barnes in 1884. Witness had often been
on the Hope Church range since the arrest of Wyers, and had
never seen the staggy headed UO —B— animal, and was satis-
fied that it had not been on said range since the arrest of Wyers.

Joe Wyers was tried and convicted on February 13, 1886. A
few days later, witness, in company with other parties, went
to the neighborhood of Hope church, about where Wyers and
defendant, on the trial of Wyers, claimed to have skinned the
dead animal. Near that church, and at points about one hun-
dred yards apart, they found two piles of bones of long defunct
animals of the cattle kind. One was the complete skeleton of
a black cow, eight or nine years of age; the other was an in-
complete skeleton of a two year old red steer. The half of the
skull found resembled the head of a staggy two year old ani-
mal. It indicated that the head had been split with the blade
of an axe. That partial skeleton had lain in that place a much
shorter time than the skeleton of the aged black cow had lain
where it was found. George Wyers, a brother of Joe Wyers,
who had been recently convicted for the theft of the Lewis
steer, was present at the partial skeleton when witness and his
party arrived, and directed the witness's attention to the said
bones. The defendant, John Maines, was not at Wyers's cow
lot on the evening of October 28, 1885, when witness saw Joe
Wyers and Morris butchering the steer as described.

On his cross examination, this witness stated that he saw no

indication, at the place where the partial skeleton lay, that the bones had been taken or carried to that place.

Deputy Sheriff Barlow testified, for the State, that he arrested Joe Wyers for the theft of the G. W. Lewis steer, in Marlin, on October 30, 1885. On the next day a warrant to search Wyers's premises for beef hides was placed in his hands. He got R. A. Reed to go with him to execute the said warrant. They found on the fence, at the house of the said Wyers, the hide of a deep red steer, somewhat past the age of two years, and branded UO on one side and —B— on the other. The hide appeared to have been taken from an animal which had not been dead more than three or four days. No other hides were found on the premises of said Wyers. Witness took the said hide to Marlin and placed it in the jail yard, where it was afterwards seen by Powers and others.

The proof proposed to be made by the absent witness, Mrs. Emma Wyers, as set out in the application for continuance, is succinctly stated as follows in the brief of the counsel for the appellant:

"The continuance in this case was applied for to procure the testimony of Mrs. Emma Wyers, who resided in Falls county. This witness was summoned on January 31, 1888, to appear on February 9, 1888, the day the application was made, but was sick and could not attend. Defendant expected to prove by this witness that she was the wife of Joe Wyers and was living with him in October, 1885, and that at said time Joe Wyers had defendant hired gathering stock for him (Wyers); that defendant was working for him (Wyers) on or about October 28, 1885, and that about said date, while witness was at the cow pen milking, defendant and Joe Wyers brought a hide freshly skinned from an animal of the cattle species and hung the same on the lot fence, from where it was subsequently taken by Barlow and Reed on or about the day of the arrest of Joe Wyers. The materiality of this testimony as set out in the application was that the State would attempt to show that the hide taken by Barlow and Reed off the fence at said time was another and different hide, and one taken off an animal killed by Joe Wyers and George W. Morris there in said lot and by them (Wyers and Morris) alone hung upon said fence."

For a fuller statement of the proof on the trial, reference is made to the previous report of this case on page 568 of the twenty-third volume of these Reports. It may be added, how-

ever, that the witness Morris testified, on this as on the previous trial, that he and Wyers did, as testified by Reed, kill and butcher a deep red steer branded UO on one side and —B— on the other, on the evening of October 28, 1885. They killed that steer in Wyers's lot, and while they were skinning it R. A. Reed came to Wyers's lot and was given some of the flesh. They afterwards hung the hide on the lot fence.

*J. N. Wharton* and *Oltorf & Harlan*, for the appellant: There was error in refusing the special charge requested. There was no positive testimony introduced on this trial showing the falsity of defendant's statement under oath. No witness testified that he and Joe Wyers did not find dead and skin the pale red steer described by him, and carry the hide and hang it on Joe Wyers's back lot fence, as he testified, but any evidence which even tends to prove its falsity is entirely circumstantial. It can not be claimed that the testimony of Morris, that he and Wyers butchered and skinned a deep red steer in that lot, and hung the hide on the fence, is positive testimony proving the falsity of defendant's statement, because it is not inconsistent with that statement when standing alone, and as long as it is necessary to couple the testimony with other evidence to prove even a circumstance in this, it is circumstantial, and it will not be denied that Morris's statement alone is inconsistent with defendant's statement under oath.

While it is true that in most cases guilt may be established as conclusively by circumstantial evidence as by any other character of proof, yet in those cases we have no statute fixing the quantum of proof, save that it establish guilt beyond a reasonable doubt; but in perjury cases our statute requires not only that the falsity of the statement under oath be established beyond a reasonable doubt, but that it be so established by the testimony of two credible witnesses, or one credible witness corroborated strongly by other evidence. Now it may be laid down as a legal axiom that all corroborative evidence is circumstantial in its character. This is verified by the every day practice of law. Then, since perjury must be proven on the testimony of one witness, corroborated strongly by other evidence, how can circumstantial or corroborative evidence alone warrant a conviction?

The court also erred in failing to submit the issue arising from the evidence in this case as to whether the defendant and

Joe Wyers did not in fact find dead and skin the pale red steer described by him, and carry the hide and hang it on Wyers's lot fence. By a reference to the statement of facts the court will readily see there were two animals testified about by the witnesses on this trial; one a pale red which was poor and had the scours, and the other a deep red which was fat and did not have the scours; and that there were two animals on the range of the descriptions above given. Defendant testified on the Wyers trial that he and Wyers found dead and skinned the pale red steer, and all his proof on this trial was directed to the establishment of the truth of his statement with reference to the pale red steer, by showing that there were two animals on the range, one a pale red and the other a deep red, and that the pale red was poor and had the scours in October. Now we submit that under this proof defendant was entitled to a charge to the effect that if the jury believed from the evidence that defendant and Joe Wyers found dead and skinned the pale red steer, they would find him not guilty. The judge, as said by this court so often, can not arbitrarily disregard the defendant's proof, but is bound to submit it to be passed on by the jury, no matter what view he may entertain as to its truth, and a failure to do so is error. There was also error in the failure of the court to either define the offense of perjury or instruct the jury as to the nature of the elements and ingredients of the offense. This error is so palpable that argument is unnecessary.

*W. L. Davidson,* Assistant Attorney General, for the State.

Hurt, Judge. This conviction is for perjury. Court met on the third day of January, 1888. This case was set down to be tried on the ninth day of February, 1888, and was called for trial on the tenth of said month.

The subpœna was served on Mrs. Wyers on the thirty-first day of January, 1888. Application to continue because of the absence of Mrs. Emma Wyers, was presented and overruled, defendant reserving his bill of exceptions. While not perfect, the diligence used to procure the attendance of the witness was sufficient.

The testimony of Barlow and Reed, witnesses for the State, rendered the evidence of Mrs. Wyers material, and, as this is a case depending alone upon circumstantial evidence for con-

viction, we think a new trial should have been granted to procure the testimony of Mrs. Wyers.

Counsel for appellant seriously insists that perjury can not be established by circumstantial evidence alone; that there must be at least one witness swearing positively to the falsity of the matter assigned for perjury.

Upon this subject our code provides that "In trials for perjury, no person shall be convicted except upon the testimony of two credible witnesses, or of one credible witness corroborated strongly by other evidence as to the falsity of the defendant's statement under oath, or upon his own confession in open court." (Code Crim. Proc., art. 746.)

Mr. Wharton says: "The old text writers, adopting the then current distinction between circumstantial and direct testimony, held that, to convict a witness of perjury, it was necessary that the falsity of his sworn statement should be testified to by two 'direct' witnesses. In view of the fact, however, that all testimony is now considered more or less circumstantial, this rule can be no longer regarded as operative; and we may view it as settled that whenever the falsity of the defendant's statement can be proved beyond reasonable doubt, then there may be a conviction." (Crim. Ev., sec. 387.)

Mr. Bishop says: "The testimony alleged to be perjured having been delivered under oath, such oath, as well as that of the contradicting witness, should be regarded on the trial for the perjury; and where the evidence thus received presents only oath against oath it will be insufficient. Therefore, the old doctrine was that two witnesses directly contradicting what the defendant testified to, are indispensable to a conviction for perjury. But, evidently, where there is but one witness to this main fact, there may be something in the case, or brought forward by a witness who can not speak to the main fact, indicating with reliable distinctness which of the two contradictory oaths is false. Hence, by the modern rule, it is sufficient either that there are two witnesses, or that the testimony of the one witness is corroborated or sustained by other facts appearing in the case, or testified to by other witnesses."

Our Code of Criminal Procedure (art. 746) evidently clings to the views of the old text writers as modified, and holds that if the perjury is not confessed in open court the falsity of the statement assigned for perjury must be proved by the positive, direct testimony of two witnesses, or by the direct, positive

testimony of one witness corroborated strongly by other evidence (evidently circumstantial).

Now there may be evidence techically circumstantial which would be amply sufficient under our Code to establish perjury. Let us illustrate: B is on trial for the murder of A. C swears that he was at a certain time at a certain place in Travis county, Texas; that B and A were present at that time and place, and that no other person was present; that he saw B shoot and kill A, giving the circumstances. B is convicted and executed. Subsequent facts lead to the conclusion that C perjured himself, and he is indicted for that offense. Upon the trial it is evident that the prosecution can not adduce direct evidence against C, but by one or more witnesses it can be shown that he was, at the time of the homicide, and on the day of the homicide specified by him, in the city of New York.

Now, technically speaking, this would be circumstantial evidence, but of such character as to be virtually positive or direct evidence. There would be no room for inferences or presumptions, for, if the jury believed the witnesses, guilt would result without any process of reasoning or presumptions. The record in this case, however, presents no such evidence as the illustration.

We are of opinion that the position of counsel for appellant is well taken under the facts of this case, and that the State has not adduced upon the trial that character or quality of evidence which is required to convict of perjury.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*